Filed 4/28/26  P. v. Nay CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052666 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. Nos. 17CR06020, 18CR02734) |
| v. | |
| JAMES ORVIS NAY, JR., | |
| Defendant and Appellant. | |

In two cases, which were sentenced together, the trial court imposed fines and ancillary costs or assessments totaling $740 on defendant James Orvis Nay, Jr.  Nay appeals, arguing that these fines and assessments should be stricken or stayed because of his inability to pay them.  As briefing was completed before the Supreme Court issued its decision on these issues in *People v. Kopp* (2025) 19 Cal.5th 1 (*Kopp*), we ordered supplement briefing concerning *Kopp*.  We now conclude that the fines and assessments challenged by Nay must be reconsidered in light of *Kopp*.  Accordingly, we reverse the judgment and remand to the trial court for reconsideration of the challenged fines and assessments.

## I. BACKGROUND

Because the two cases brought against Nay were resolved by plea, the facts below concerning those cases are drawn from the preliminary hearings in the cases.

These cases arise out of assaults in 2017 and in 2018. In September 2017, M.D. and S.R. exited a gym, or "dojo," owned by M.D. with S.R.'s two children. When a car raced past them, they yelled to the driver to slow down. The driver, who was identified as Nay, stopped his car and exited it, walked up to M.D., and punched him several times in the face. M.D. kicked Nay, who smelled of alcohol, in the groin. Although unfazed by the blow, Nay went to his car, parked it in a nearby parking lot, walked back, and again hit M.D. in the face. This time, M.D. did not respond, and Nay went back to his car. However, Nay told M.D. that he was going to blow up his business, blow up his car, and run him over. Then, Nay came around a corner at high speed and tried to run over M.D.

Six months later, in March 2018, T.M. was driving with her son. A car that had been tailgating T.M. cut her off and stopped. The woman driving the car, who also had a child in her car, got out, yelled at T.M. for driving too slowly, and threw cigarette butts at T.M.'s car. A second car pulled up, Nay stepped out, yelled obscenities at T.M., and threw more cigarette buts at her car. T.M. managed to get around the first car and drove to her house. However, as she was unlocking the gate to the house, Nay screeched to a halt behind her, yelled further obscenities, and threatened to kill her, before a neighbor arrived and Nay left.

In the case arising out of the September 2017 incident (Case No. 17CR06020), Nay was charged with three offenses: (1) assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1); (2) battery in violation of Penal Code section 242; and (3) driving with a suspended or revoked license in violation of Vehicle Code section 14601.1. (Subsequent undesignated statutory references are to the Penal Code.) The information in that case also alleged three prior convictions for violating Vehicle Code section 14601.1. In the case arising out of the March 2018 incident (18CR02734), Nay was charged with a single count of criminal threats in violation of section 422.

In the September 2017 case, Nay was arraigned on September 22, 2017, but later released on bail. About five years later, in August 2022, Nay entered into a plea agreement. Under this agreement, the assault counts were amended to charge assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a)(4), Nay pleaded no contest to one of the assault charges in each case, and the remaining counts as well as two other cases were dismissed. The indicated sentence for the assault charges was 365 days in jail and two years formal probation.

While awaiting sentencing Nay again was charged with assault and with driving without a valid license, and in light of those charges and Nay's failure to appear at a hearing, the trial court decided to impose a greater sentence. Selecting the middle term on both assault charges, the trial court sentenced Nay to 36 months in prison in the September 2017 case, with the same sentence in the March 2018 case running concurrently. Even more important for this appeal, in each case the trial court imposed $370 (for a combined total of $740) in fines and assessments: (1) a $300 restitution fine under section 12202.4, subdivision (b); (2) a $300 parole revocation restitution fine under section 1202.45, suspended unless parole is revoked; (3) a $40 court operations assessment fee under section 1465.8; and (4) a $30 court facilities assessment fee under Government Code section 7037.

After these fines and assessments were imposed, defense counsel asked the trial court to not impose the fines in light of *People v. Dueñas* (2019) 30 Cal.App.5th 1157, disapproved in part in *Kopp*, *supra*, 19 Cal.5th at p. 23, fn. 17, "as Mr. Nay is not currently employed." The trial court denied this request. It asserted that the fact that Nay was not currently employed is "true of all sentenced prisoners" and "not a good argument" because Nay will "get a job when he gets out, and he'll have work in prison . . . ."

Nay filed a timely notice of appeal.

## II. DISCUSSION

Nay argues that the judgment should be reversed and that the trial court should be directed to reconsider the restitution fines and assessments imposed on him in light of the Supreme Court's decision in *Kopp*, *supra*, 19 Cal.5th 1. As explained below, we agree.

### A. The *Kopp* Decision

In *Kopp*, the Supreme Court addressed how court-ordered payments should be analyzed when a defendant claims inability to pay. (*Kopp*, *supra*, 19 Cal.5th at p. 9.) The court began by dividing such payments into three categories: "fines, ancillary costs, and victim restitution." (*Id*. at p. 11.) *Kopp* used the term "fines" to refer to " 'penalties inflicted by the sovereign for commission of offenses.' " (*Id*. at p. 11; see also *id*. at p. 12 ["[W]e use the term 'fine' to refer to a legislatively provided punishment following a criminal conviction."].) By contrast, *Kopp* used the term "ancillary costs" to refer to payments that are "generally not intended to punish for the commission of a crime" but instead are "funding mechanisms, created by the Legislature to reimburse a government agencies for expenditures or to otherwise fund a broad assortment of services." (*Id*. at p. 11.) Finally, the court used "[r]estitution" to refer to payments made to "compensate[] crime victims for economic loss caused by an offense." (*Id*. at p. 15.) As in this case, the trial court in *Kopp* imposed fines and ancillary costs, but not restitution under the Supreme Court's definition. (*Id*. at pp. 12-16.)

*Kopp* held that restitution fines under section 1202.4 "constitute[] punishment" and therefore "fines" rather than true restitution and that parole revocation restitution fines under section 1202.45—which are in the same amount as restitution fines (§ 1202.45, subd. (a))—are likewise punitive and therefore fines. (*Kopp*, *supra*, 19 Cal.5th at pp. 13-14.) Such fines, the court noted, do not need to be "structured to reflect each person's ability and avoid disproportionate burdens." (*Id*. at pp. 22-23 [citing *Bearden v. Georgia* (1983) 461 U.S. 660, 666, fn. 8 and *San Antonio Independent School Dist. v. Rodriguez* (1973) 411 U.S. 1, 22.) Accordingly, due process does not require

courts to consider the ability of defendants to pay fines before imposing them. (*Id*. at p. 23.) Instead, "excessive fines analysis, which considers ability to pay, is the proper vehicle to challenge punitive fines." (*Ibid*.) Although the defendant in *Kopp* did not invoke the excessive fines clauses of the state and federal Constitutions (*id*. at pp. 10, 23), *Kopp* remanded the defendant's challenge to the fines imposed "to give him the opportunity to assert the legal analyses applicable to such a challenge." (*Id*. at p. 23; see also *id*. at p. 30.)

By contrast, *Kopp* held that ancillary costs or assessments should be imposed on criminal defendants only if they have the ability to pay the costs. (*Kopp*, *supra*, 19 Cal.5th at p. 30.) The Supreme Court reached this conclusion on equal protection grounds. (*Id*. at pp. 24-30.) The defendant in *Kopp* argued that he was being "treated unequally compared to indigent civil litigants," who are afforded waivers for assessments similar to those imposed on him. (*Id*. at p. 25.) The Supreme Court agreed. (*Ibid*.) The court noted that the Legislature has enacted "a robust fee waiver system in civil cases." (*Id*. at p. 26.) In addition, because both the civil operations and facilities assessments imposed on the defendant in *Kopp* were "enacted. . . to raise money for the courts" and "were ultimately deposited into the same fund" (*id*. at p. 27), the Supreme Court concluded that "there appears no rational basis to deny only indigent criminal defendants the ability to avoid those costs" (*id*. at p. 29). Accordingly, the court directed the trial court on remand to consider the defendant's ability to pay before imposing a court operations assessment under section 1465.8 or a court facilities assessment under Government Code section 70373. (*Id.* at p. 31.)

## B. The Restitution Fines

As noted above, *Kopp* held that restitution fines under section 1202.4 and parole revocation restitution fines under section 1202.45 are not true restitution, but instead punitive fines (*Kopp*, *supra*, 19 Cal.5th at pp. 13-14), which may be challenged under the excessive fines clauses (*id*. at p. 23). Nay requests the opportunity to do so. Like the

5

defendant in *Kopp*, Nay should be given the opportunity on remand to assert that the fines violate the excessive fines clauses under the principles announced in *Kopp*. (*Ibid.*)

**C. The Ancillary Costs**

We also conclude that the court operations assessments under section 1465.8 and the court facilities assessments under Government Code section 70373 should be vacated and the trial court should consider Nay's ability to pay them. *Kopp* held that both assessments are ancillary costs (*id*. at pp. 14-15) and that, because fee waivers are available to indigent civil defendants, courts must consider whether criminal defendants are similarly indigent and unable to pay these costs (*id*. at pp. 24-30, 31). Accordingly, in this case, the trial court also should consider whether Nay's inability to pay bars the court operations and court facilities assessments imposed upon him.

The Attorney General contends that the trial court already has considered and rejected Nay's claimed inability to pay. However, the trial court dismissed Nay's claim of inability to pay on the ground that he could work in prison and get a job when he is released. Moreover, the Attorney General makes no attempt to show that the trial court applied the correct standard in making this determination. Indeed, notably absent from the Attorney General's brief is any mention of Justice Liu's concurrence in *Kopp*, which suggested that the potential for future prison wages may not rebut a showing of indigency because prison jobs are not always available, they pay little, and prisoners often must use that pay to purchase necessities such as toothpaste and soap. (*Kopp*, *supra*, 19 Cal.45th at p. 35, conc. opn. of Liu, J.) Justice Liu also took the position that "criminal defendants may obtain automatic fee waivers based on the same criteria as civil litigants" and therefore "should be presumed indigent if they receive public benefits, their income is below the federal poverty level, or they are represented by a public defender." (*Id*. at pp. 34-35.) We remand to the trial court to consider these issues in the first instance.

**D.  Harmless Error**

The Attorney General also argues that any error by the trial court was harmless beyond a reasonable doubt because Nay will be able to earn enough money in prison to cover the assessments imposed on him and to seek employment upon his release to cover the restitution fines.  However, the Attorney General offers no analysis or authority establishing that potential future employment may be considered in determining a criminal defendant's ability to pay either as a matter of equal protection or under the excessive fines clause.  (See *Kopp, supra,* 19 Cal.5th at p. 35, conc. opn. of Liu, J. ["Courts should not indulge speculative or unrealistic notions of future wage-earning opportunities when assessing a defendant's ability to pay fines or fees."].)  Accordingly, the Attorney General has failed to demonstrate that any error committed by the trial court was harmless.

### III.  DISPOSITION

The judgment is reversed, and these matters are remanded to the trial court solely for further proceedings concerning the imposition of fines and ancillary costs.

_____
BROMBERG, J.

I CONCUR:


_____
GREENWOOD, P. J.


I CONCUR IN THE JUDGMENT ONLY:



_____
DANNER, J.



*People v. Nay*
H052666